*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSEPH JOHN BLAIR, JR.,

      Defendant-Appellant.

UNPUBLISHED
October 29, 2019

No. 347885
Berrien Circuit Court
LC No. 2018-016211-FH

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The question presented is whether the police constitutionally seized and searched defendant Joseph Blair's car after arresting him for driving with a suspended license. The trial court denied Blair's motion to suppress the evidence found during the search, ruling that the community-caretaking exception to the warrant requirement authorized the police to impound the car and to perform an inventory search of its contents.

Blair's car was legally parked in a Walmart parking lot and was not impeding traffic. Nor was it impounded for a reason related to any community-caretaking function. We reverse.

I

While on road patrol at 1:30 a.m., Berrien County Sheriff's Deputy Jared Phillips spotted a vehicle with its license plate light dangling in front of the plate. The vehicle drove into a Walmart parking lot and Phillips followed. Phillips turned on his flashing lights and the car pulled into a parking space at the farthest end of the lot, a considerable distance from the customer entrance. The large parking lot was "very empty," Phillips later testified.

As Phillips approached the vehicle, defendant Joseph Blair immediately rolled down the driver's side window and announced that his license was suspended. He produced an identification card issued by the Department of Corrections. On Phillips's command, Blair submitted to a pat-down search yielding only a pocket knife. Blair then accompanied Phillips to the patrol car. Blair sat in the back seat while Phillips confirmed Blair's license suspension.

-1-

Phillips also learned that there were two outstanding warrants for Blair's arrest. Before placing Blair in handcuffs, Phillips asked for permission to search Blair's car. Blair refused.

Phillips returned to the vehicle and engaged its female passenger in conversation; among other things, he inquired whether there was "anything illegal in the car." She denied knowledge of contraband. "What kind of drugs does Joseph do? . . . He's got a couple of drug charges," Phillips persisted. The passenger's license, too, was suspended, and Phillips allowed her to walk away. Phillips returned to the patrol car and informed Blair, "We are probably going to search the vehicle, okay, because you have a suspended license, okay, out of Michigan. And she's also suspended."

Another deputy arrived on the scene. Phillips repeatedly entreated Blair to consent to a search: "Do you mind if we just double check the vehicle to make sure there's nothing in there?" was followed by "I'm asking for consent," and "If I tow the vehicle I have to search." Blair declined each invitation. Phillips also tried, "Joseph, what's in the car?" After Blair's second refusal, Phillips commented to the other deputy, "So there's probably something in the car that shouldn't be."

The officers impounded and searched Blair's car. They found a variety of illegal narcotics, a pistol, and a loaded Colt revolver. The prosecutor charged Blair with delivery/manufacture of methamphetamine, MCL 333.4701(2)(b)(*i*); delivery/manufacture of a Schedule 4 controlled substance, MCL 333.4701(2)(c); two counts of carrying a concealed weapon in an automobile, MCL 750.227; one count each of possession of a firearm by a felon, MCL 750.224f; receiving and concealing a stolen firearm, MCL 750.535b; and possession of a firearm during the commission of a felony, MCL 750.227b.

II

Blair filed a motion to suppress the weapon and drug evidence, contending that the search violated the Sheriff's Department policy governing vehicle impoundment and towing. Additionally, Blair argued, the search was pretextual and Phillips acted in bad faith. The circuit court conducted an evidentiary hearing at which only Phillips testified.

The prosecution implicitly conceded that the deputies lacked probable cause or reasonable suspicion to search Blair's automobile, and instead justified the car's impoundment and search on the community-caretaking exception to the warrant requirement; the prosecution maintains that position on appeal. The community-caretaking doctrine permits the police to seize vehicles for reasons related to public and police safety, to prevent the car from impeding the flow of traffic, and to reduce the risk that a car left unattended might be vandalized and the public jeopardized or the police held responsible. The United States Supreme Court has described the following reasonable bases for an impoundment:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets

-2-

at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge. [*South Dakota v Opperman*, 428 US 364, 368-369; 96 S Ct 3092; 49 L Ed 2d 1000 (1976) (citation omitted).]

When a car is constitutionally impounded, the police may perform an inventory search of its contents. The justifications for a search and inventory differ from those legitimizing the impoundment itself. The *Opperman* Court explained that when vehicles are impounded, the police "generally follow a routine practice of securing and inventorying the automobiles' contents." *Id.* at 369. These police procedures serve "three distinct needs": protecting the vehicle owner's property while the vehicle remains in police custody; protecting the police against claims for lost or stolen property, and protecting the police from possible danger. *Id.*

Our Supreme Court has echoed that the impoundment must be proper to justify a warrantless search of a car. The validity of an inventory search of a vehicle depends on whether the vehicle was lawfully impounded and the search was conducted by the police in accordance with standardized departure procedures. *People v Toohey*, 438 Mich 265, 284-285; 475 NW2d 16 (1991). The Court emphasized in *Toohey* that inventory searches of impounded vehicles are reasonable to the extent they conform to standard police procedures and the principles underlying the community-caretaking function. *Id.* at 275-276.

The community-caretaking function is distinct from another law enforcement purpose: the investigation of crime. "To be constitutional, an inventory search *must* be conducted in accordance with established departmental procedures, which all police officers are required to follow, and *must not* be used as a pretext for criminal investigation." *Id.* at 284 (emphasis in original). "The goal is to prevent inventory searches from being used as 'a ruse for general rummaging in order to discover incriminating evidence' and, therefore, the applicable policy 'should be designed to produce an inventory.' " *People v Poole*, 199 Mich App 261, 266; 501 NW2d 265 (1993), quoting *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990). The United States Supreme Court, too, has underscored that the community-caretaking function affords an officer with discretion to impound and search a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v Bertine*, 479 US 367, 375; 107 S Ct 738; 93 L Ed 2d 739 (1987).

MCL 257.252d governs the ability of a police agency to remove vehicles from public and private property. The impoundment policy of the Berrien County Sheriff's Department incorporates this statute. MCL 257.252d(1) provides in relevant part:

A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner of the vehicle in any of the following circumstances:

\* \* \*

(e) If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime.

\* \* \*

(g) If the vehicle is hampering the use of private property by the owner or person in charge of that property or is parked in a manner that impedes the movement of another vehicle.

The Berrien County Sheriff Policy and Procedures governing motor vehicle towing and impounding states:

### III.    TOWING MOTOR VEHICLES

**A.**    [MCL] 257.252d of the Michigan Vehicle Code gives police officers the authority to immediately remove vehicles from private or public property.

**B.**    This Section also describes the circumstances, which must be present in order to invoke this portion of the vehicle code.  Below, in abbreviated terms, are those circumstances:

\* \* \*

5.    If the vehicle must be seized to preserve evidence of a crime, or when there is reasonable cause to believe the vehicle was used in the commission of a crime.  In order to invoke this portion of the section, officers should remember that you must establish that a crime has occurred or in [sic] occurring.

\* \* \*

7.    If the vehicle hampers the use of private property or impedes the movement of another vehicle.

\* \* \*

Miscellaneous

\* \* \*

3.    If improper use of registration plates is determined, the officers must remember that even though they have seized the registration plate from a vehicle as evidence, and the vehicle is no longer licensed, one of the circumstances outlined in [MCL] 257.252d of the Michigan Motor Vehicle Code must be present before an impound can be justified.  If the vehicle is legally

-4-

parked and does not create a hazard, or fall within any of the other circumstances necessary to justify an impound, an impound cannot be effected.

       4.     The same principles apply to situations where a driver is arrested. An arrest does not automatically justify an impound. The outlined criteria as found in [MCL] 257.252d of the Michigan Motor Vehicle Code must still be met.

**Unusual Situations**

In a situation where:
1.     a vehicle was stopped for improper plates
2.     the driver of a vehicle is arrested and an officer cannot legally impound

the officer shall immediately tag the vehicle for 48 hours and treat the vehicle as any other abandoned vehicle that has been tagged for 48 hours.

## V.    EXCEPTIONS TO TOWING AND IMPOUNDING

**A.**    It may not be necessary to tow and/or impound a vehicle when there is another driver that the owner is willing to release the vehicle to and the vehicle is in operational condition. This person:
      1.     Must be a licensed driver and have a valid driver's license in his/her possession.
      2.     Must be present at the scene or able to arrive within a reasonable length of time.
      3.     Should not appear to be intoxicated.
      4.     Should not be involved in the arrest of the driver.

**B.**    It may not be necessary to tow and/or impound, depending on the circumstances of the investigation, when the vehicle is within the immediate vicinity of the owner's home or business.

**C.**    It may not be necessary to tow and/or impound if other acceptable arrangements are made by the owner such as:
      1.     Wrecker called by owner or driver prior to officer's arrival at the scene.
      2.     Wrecker must arrive within a reasonable amount of time.

**D.**    It may not be necessary to impound if the vehicle is, or can be, legally parked and does not create a hazard to traffic.

**E.**    Impoundment may not be necessary to preserve the desired evidence. For example, photographs may suffice and thus eliminate the need for impoundment.

**F.**    The above alternatives to impounding shall be considered and/or implemented whenever reasonable under the circumstances.

In the trial court, the prosecution contended that two sections of Berrien's policy authorized Phillips to impound and search Blair's car: that the vehicle was "used in the commission of a crime" under III(B)(5), and that it "hamper[ed] the use of private property" under III(B)(7).

The trial court denied the motion to suppress, finding that the vehicle was properly impounded pursuant to MCL 257.252d(1)(g). The court explained:

> The Court does find that in this instance the vehicle driven by Mr. Blair and ultimately parked on private property in a parking lot did hamper the use of that property. The language in the Berrien County Sheriff's Department policy does not qualify was [sic] to significant hampering or slight hampering. It simply says hamper. And it's just common sense that when there's a vehicle parked in your parking lot that's not a business invitee and it could be there for, as Ms. Wainwright [the prosecutor] put it out a significant period of time. That would create a hampering of the use of that private property.

> The Officer further pointed out that he was there in the middle of the night. The level of hampering of the use of that private property would likely be enhanced during normal, regular, daylight, business hours, when the store would naturally be more – more busy. Other types of activities occurred in parking lots like this there clear [sic] within the discretion and control of the owner of the property.

> So I do find that the inventory search was properly conducted pursuant to a routine administrative policy.

Prompted by the prosecutor, the judge also found that MCL 257.252d(1)(e) "potentially" authorized impoundment because "the vehicle was being used to commit a crime, driving with a suspended license." The court noted, however, that subparagraph 7 provided the "strongest" support for the impoundment. We granted Blair's application for leave to appeal. *People v Blair, Jr*, unpublished order of the Court of Appeals, entered April 25, 2019 (Docket No. 347885).

III

We review the trial court's findings of fact for clear error, and consider de novo both questions of law relevant to the suppression motion and the judge's ultimate decision. *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008); *People v Darwich*, 226 Mich App 635, 637; 575 NW2d 44 (1997). In assessing the constitutionality of the search and seizure of Blair's car, we must examine "all the facts and circumstances" to determine whether the police acted reasonably. *People v Krezen*, 427 Mich 681, 684; 397 NW2d 803 (1986) (BOYLE, J.) (quotation marks and citations omitted).

The trial court clearly erred in finding that Blair's car was "hamper[ing]" the use of private property, as no evidence supported this finding. The trial court also erred in determining that the vehicle had to be seized "to preserve evidence of a crime," or because the car "was used

in the commission of a crime." These grounds for impoundment are unrelated to a community caretaking rationale. The Berrien County Sheriff Policy and Procedures and the circumstances surrounding Phillip's decision to impound the car demonstrate that the purpose of the seizure was instead investigational. And because the officers lacked probable cause or reasonable suspicion to seize the car, the resulting search contravened the Fourth Amendment.

A

Blair's vehicle was legally parked in a designated parking space in a section of the Walmart parking lot located at a considerable distance from the store's entrance. Phillips speculated that employees parked in the same area, but no evidence supported that the area was actually designated for employee-only parking. Phillips admitted that the car "didn't create a hazard or obstruct traffic or anything like that," and conceded that at the time of Blair's arrest, the policy's "hampering" provision did not provide authority for his impoundment decision. Moreover, the police remained with the vehicle for 20 minutes before searching it, and a significant time after. During that interval no one associated with Walmart requested the vehicle's removal. And the Berrien County Sheriff's Department policy expressly provides for tagging a vehicle parked on private property and reported as abandoned, permitting impoundment only after 48 hours have thereafter elapsed.[1] Accordingly, section III(B)(7) did not authorize the impoundment of Blair's vehicle.

B

Phillips asserted that he impounded the car based on section III(B)(5) of the Berrien County policy, which states:

> If the vehicle must be seized to preserve evidence of a crime, or when there is reasonable cause to believe the vehicle was used in the commission of a crime. In order to invoke this portion of the section, officers should remember that you must establish that a crime has occurred or in [sic] occurring.

Because Blair had committed the crime of driving with a suspended license, Phillips testified, the policy permitted the vehicle's impoundment.

We begin with the observation that an officer's decision to impound a car pursuant to a departmental policy does not automatically dictate that the seizure is reasonable under the Fourth Amendment. A state or local government may promulgate policies governing searches and seizures of private property, but may not "authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which it attaches to such conduct." *Sibron v New York*, 392 US 40, 61; 88 S Ct 1889; 20 L Ed 2d 917 (1968). When reviewing a state-authorized search and seizure of private property, we must nevertheless determine whether the government's actions were "reasonable under the Fourth Amendment. Just as a search

---

[1] This portion of the policy reflects that generally, it is a private property owner's prerogative to seek removal of an unattended vehicle.

authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one." *Id*.

The United States Supreme Court has authorized noninvestigative seizures and searches, but has "never implied in any way that searches and seizures conducted according to standardized criteria prescribed by departmental policies are reasonable within the meaning of the Fourth Amendment for that reason alone." *People v Brown*, 415 P3d 815, 819, 2018 CO 27 (CO, 2018). "An impoundment must either be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation." *United States v Duguay*, 93 F3d 346, 352 (CA 7, 1996). Even when related to a criminal investigation, the United States Supreme Court strictly cabined the power of the police to conduct warrantless automobile searches in *Arizona v Gant*, 556 US 332, 351; 129 S Ct 1710; 173 L Ed 2d 485 (2009):

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

Thus, a statute or policy cannot authorize an otherwise unconstitutional search and seizure. That the police followed the statute and a written policy does not automatically shield police action from Fourth Amendment scrutiny, and cannot override Constitutional protections. And here, the Berrien County Sheriff Policy and Procedures itself casts doubt on Phillip's ability to impound Blair's car based on his commission of the crime of driving with a suspended license.[2]

Section III of the policy addresses "towing motor vehicles." Paragraph 3 of this section reinforces that the inability to drive a car from the scene of a traffic stop does not, standing alone, supply a ground for seizure of the vehicle, even when the car cannot be driven because it lacks a valid license plate:

> If improper use of registration plates is determined, the officers must remember that even though they have seized the registration plate from a vehicle as evidence, and the vehicle is no longer licensed, one of the circumstances outlined in [MCL] 257.252d of the Michigan Motor Vehicle Code must be present before an impound can be justified.[3] *If the vehicle is legally parked and does not create*

---

[2] Driving with a suspended license is a misdemeanor. MCL 257.904(3). For the first violation of this law, a person is subject to "imprisonment for not more than 93 days or a fine of not more than $500, or both[.]" MCL 257.904(3)(a).

[3] The improper use of a registration plate is a misdemeanor "punishable by imprisonment for not more than 90 days, or by a fine of not more than $100, or both." MCL 257.256(2).

*a hazard, or fall within any of the other circumstances necessary to justify an impound, an impound cannot be effected.* [Emphasis added.]

Nor does the driver's arrest routinely require impoundment:

4. The same principles apply to situations where a driver is arrested. *An arrest does not automatically justify an impound.* The outlined criteria as found in [MCL] 257.252d of the Michigan Motor Vehicle Code must still be met. [Emphasis added.]

Section V of the policy sets forth "Exceptions to Towing and Impounding." Among them are the following pertinent provisions:

**D.** It may not be necessary to impound if the vehicle is, or can be, legally parked and does not create a hazard to traffic.

**E.** Impoundment may not be necessary to preserve the desired evidence. For example, photographs may suffice and thus eliminate the need for impoundment.

**F.** The above alternatives to impounding shall be considered and/or implemented whenever reasonable under the circumstances.

These provisions counsel that impoundment is unnecessary and contraindicated if based solely on a driver's arrest for having committed a crime, even if the vehicle "was used in the commission of a crime" and may constitute "evidence" of the crime. And subsection F *mandates* consideration of leaving a car in place "if it is reasonable to do so." These restraints counsel that even though a car cannot be driven at the time of arrest, if the vehicle is legally parked and otherwise presents no risks, the vehicle's owner must be afforded an opportunity to tow or license it, or to retrieve its contents.

The Berrien County Sheriff Policy and Procedures aside, to pass constitutional muster an impoundment conducted pursuant to the community-caretaking function must actually serve a community-caretaking function. The first clause of the first sentence of section III(B)(5) ("If the vehicle must be seized to preserve evidence of a crime") advances a criminal investigation goal rather than community caretaking. This provision corresponds to the automobile exception to the warrant requirement, which authorizes officers to conduct "a warrantless search of an automobile, based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle[.]" *California v Acevedo*, 500 US 565, 569; 111 S Ct 1982; 114 L Ed 2d 619 (1991). Rather than encapsulating a community-caretaking purpose, the first sentence of section III(B)(5) codifies an entirely different exception.

The second clause of the first sentence of Section III(B)(5) ("when there is reasonable cause to believe the vehicle was used in the commission of a crime") authorizes the

impoundment and search of a vehicle any time the driver is arrested for a crime involving the use of the vehicle.[4]  As applied to the facts of this case, however, the second clause is unrelated to the community-caretaking function.

Inventory searches are exempt from the warrant requirement precisely because they are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v Dombrowski*, 413 US 433, 441; 93 S Ct 2523; 37 L Ed 2d 706 (1973).  See also *Opperman*, 428 US at 370 n 5 (discussing the "noncriminal context" of inventory searches and their "noninvestigative" nature); *Gant*, 556 US at 345 (observing that a rule permitting the police to search a car's passenger compartment and every container within it "whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals.  Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects").  The seizure of Blair's car cannot be justified on community caretaking grounds, however, as according to Phillips it was accomplished for the purposes related only to Blair's "crime" of driving on a suspended license.

The prosecution has not offered a rationale for seizing a vehicle based on the driver's lack of a valid driver's license other than that the car possesses some *evidentiary* value.  But this ground for overcoming Blair's Fourth Amendment right was rejected in *Gant*.  "Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Id.* at 344.  Obviously, the prosecution did not need to possess the vehicle itself to prove that Blair drove on a suspended license.  Under the facts presented, the car itself had no evidentiary value.  A different result would obtain if, for example, the car was used in a hit-and-run and was a potential source of forensic evidence, if the car was stolen, or if the police articulated a community-caretaking purpose for seizure unrelated to a criminal investigation.   Phillips's testimony establishes that the car's impoundment had nothing to do with protecting the public or the police, and instead was intended to advance the criminal case against Blair.  And "evidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation." *Terry v Ohio*, 392 US 1, 29; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

We stress that our ruling does not imply that Phillips acted in bad faith.  To the contrary, Phillips acted in conformity with a written procedure.  But Phillips' good faith is not relevant to the determination of whether the impoundment of Blair's car was constitutionally permissible.  Rather, "it is the caretaking function which legitimizes an inventory." *State v Kunkel*, 455 NW2d 208, 211 (ND, 1990).  See also *State v Leak*, 2016-Ohio-154, P37; 47 NE3d 821 (Ohio S Ct, 2016) ("The fact that the arresting officer used established police procedure to conduct the

---

[4] As discussed above, the policy carves out an exception to this rule for improper use of a registration plate.

inventory search does not overcome the unlawfulness of the impoundment in the first place. This is precisely the type of governmental intrusion the Fourth Amendment seeks to prohibit. Permitting the evidence to be used against Leak under the good-faith exception to the exclusionary rule would eviscerate the purpose of the Fourth Amendment's prohibition against unreasonable searches and seizures.").[5]

In a case presenting a Fourth Amendment question, the ultimate answer usually turns on reasonableness. The community-caretaking function supplies a reasonable ground for the police to impound cars that might otherwise threaten public or police safety. No such threat was presented here. Blair's car was legally parked and was seized for reasons that are fundamentally inconsistent with community caretaking. Accordingly, impoundment of the car was unreasonable and the search contravened the Fourth Amendment.

We reverse the circuit court's order denying Blair's motion to suppress, and remand for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[5] Phillips's repeated and unsuccessful efforts to obtain consent to search the vehicle reinforce that it was impounded for a purpose unrelated to community caretaking. "An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' " *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990).